Opinion of the Court, by
Judge Mills.
John Craig exhibited his bill, claiming one third of two entries and patents; one entered in the name John Taylor, of three thousand acres; the other in the parné of William Kelson; for fifteen hundred acres; *78 The claim set up was fora locator’s interest of one third, and is based on a writing between Simon Kenton and Ambrose Walden, to this effect:
The written contract.
The bill.
The answers,
The decree of the circuit court.
“ Articles of agreement made and done this first day of May, 1780, between Simon Kenton, of Kentucky, of the one part, and Ambrose Walden, of Caroline county, Virginia, witnesseth:. That the said Simon Kenton doth bind himself fo locate ten thousand acres for the said Ambrose Walden, in the district of Kentucky, in consideration of which, the said Ambrose Walden doth bind himself his heirs and assigns to convey a proper deed of one third of the said ten thousand, so located, unto (he aforesaid Simon Kenton, respect being had to quality and other local advantages; and lastly, both parties bind themselves to the performance of the premises, under the penalty of fifty thousand pounds.”
This article was signed both by Walden and Kenton, and assigned away by the latter, and after it passed through several hands, it came to the complainant.
The bill was filed against Taylor and Nelson’s heirs, and Fodley, Poage and others, who had contracted to purchase from them, but had received no conveyances; and it also sets up and relies on the custom of the country, at that time, as binding the holders of warrants to give that quantity to the locator; and it avers that these entries were part of the ten thousand acres mentioned in the contract aforesaid, the holders of the warrants having s§nt them to this country to be located by Wal? den, who had employed Kenton to locate.
The answers place the defence on various grounds, and deny that these warrants were part of the ten thousand acres, or had any connection v^ith the contract, and if they had, insist that Walden had no authority to make such disposition of the warrants, from the holders thereof. Taylor admits that he sénl his warrant by Walden to this country, who undertook to locate it himself, for a pecuniary consideration, and was furnished with part; that Walden returned,'and stated that hp had employed Kenton to locate, to whom he had often written and sent money, but received no answer.- He denies that lie evpr knew or heard of the contract set UP in thc for twenty years after its date,
The court below decreed'a conveyance of one third of each tract, to reverse which, this writ of error issued,
Query as to the parol ev- ‘ enc®'
of the land as locator’s obH^tion^ a person employed by the locate them to; to a third person, who ó'S'ion, it is* necessary to aY°r a™1 the'owner authorized or ratified the oontract‘
custom of the coun-l^aktouUhc oase.
flaggin, for plaintiffs.
There is proof that Simon Kenton attended and difected the surveying of these claims, and he swears that he made the locations, and that they were part of the tén thousand acres included in Walden’s contract.
if the contract in this instance* which in its terms applics to Walden's own lands, can be so construed as to admit the parol proof, of these entries being part; which there is some doubt,) still there is a defect, both in the allegations of the bill, and the proof, which is superable. It is not shown that Walden had any authority from the holders of these warrants, to dispose of t-hem m this manner, or that the holders of them ever ratified this contract. Of course, the contract cannot be made the base of a decree; but Walden must remain responsible, and Kenton or his assignee, be left to his remedy at law thereon. '
Nór can the decree be sustained on the fact, that Kenton did locate, and that the custom of the country bound the holders of the warrants to give a certain proportion of (he.land; for whatever may be the influence of custom upon the law-merchant, and upon other ques-tionsoflaw, we are aware of no principle, which would make a custom like this, strong enough to shape itself into a contract which a court of equity ought to force, or to compel men, without their knowledge or consent, thus to with a of their real estate.
The decree cannot, therefore, be sustained, but must be reversed with costs, and directions to the court below. to dismiss the bill with costs.